■ ROBERT S. BOURKE, Respondent, v ALBANY MEDICAL CENTER et al., Defendants, and ALBANY MEDICAL COLLEGE, Appellant. A. JOHN POPP et al., Respondents.—Mikoll, J. Appeal from that part of an order of the Supreme Court (Harris, J.), entered January 15, 1991 in Albany County, which granted plaintiff's cross motion for partial summary judgment and directed payment of a percentage of certain partnership assets to plaintiff and defendant Louis R. Nelson, and denied defendant Albany Medical College's cross motion for a certain percentage of said partnership assets.

Plaintiff, a physician, and defendants Louis R. Nelson, A. John Popp and John B. Waldman, also physicians, were, at all times relevant to this action, full-time faculty members in the division of neurosurgery at defendant Albany Medical College (hereinafter the College). The four doctors formed a partnership, BNPW, and became participants in the College's Faculty Practice Plan (hereinafter the Plan). The Plan allowed eligible faculty members to engage in clinical practice either as employees of the college or "[a]s employees of an Operating Unit which is a separate legal entity and relates to the College and the Plan by an affiliation agreement". An "operating unit" is defined as a department or division within a department. Revenue generated from the clinical practice of Plan partici-

pants employed by the College is deposited into the account of the appropriate operating unit while revenue generated by participants employed by separate legal entities affiliated with the College is deposited into accounts owned and selected by those entities.

In January 1985 plaintiff's hospital privileges were suspended. On July 1, 1985 the BNPW partnership was dissolved upon Nelson's voluntary departure from the College. A receiver for the partnership assets, consisting primarily of accounts receivable, was appointed in February 1986. Thereafter, plaintiff commenced this action alleging 18 causes of action, 17 of which were dismissed.* The remaining cause of action sought judicial dissolution and an accounting of the partnership assets. Subsequently, Waldman moved under CPLR 6401 to secure the accounting and other relief pertaining to the disbursement of the funds held by the receiver. Cross motions for the same relief were made by plaintiff, Popp and the College. Supreme Court granted plaintiff summary judgment, formally dissolved the BNPW partnership and ordered the receiver to (1) fix and pay the fee of the receiver, (2) pay the costs and expenses of the receiver in collecting BNPW partnership accounts receivable, (3) pay 15% of the remaining balance to the College for distribution according to paragraph 4 (E) (1) of the Plan, and (4) pay 21.25% of the balance remaining to each member of the former BNPW partnership. This appeal is taken from that portion of the order directing payment of the 21.25% of the balance to plaintiff and Nelson and the denial of the College's request that it be paid the pro rata shares of plaintiff and Nelson.

The College notes that the purpose of the Plan is to permit it to provide income to a physician when he or she first joins the College and to recoup its investment when the physician leaves. The College argues that because the parts of an agreement should be construed consistent with its purpose, it is entitled to the accounts receivable of plaintiff and Nelson. We disagree. The plain unambiguous language of the document should be given its ordinary meaning. Paragraph 3 (C) provides that "[p]articipants in each Operating Unit [of the College] shall elect, by majority vote, to relate to the College * * * (1) [a]s employees of the College * * * or (2) [a]s employees of an Operating Unit which is a separate legal entity and relates to the college and the Plan by an affiliation agree-

---

* The dismissal of the 17 causes of action by Supreme Court was affirmed on appeal to this court (145 AD2d 868).

ment". The four physicians of the division of neurosurgery elected to relate to the College as a separate legal entity, the BNPW partnership. Significantly, paragraph 4 (C) of the Plan, which defines Plan income, notes that the "legal title to Operating Unit funds and receivables of separate legal entities does not reside in the College". Paragraph 7 (G) (1) of the plan provides that the accounts receivable generated by a terminated participant employed by the College "shall continue to be property of the College"; paragraph 7 (G) (2) provides that the accounts receivable generated by a terminated participant employed by an operating unit, which is a separate legal entity, "shall continue to be the property of the separate legal entity". It appears therefore that where a separate legal entity pays the salary and expenses of the participant, the entity retains title to the accounts receivable in order that it may recoup its investment. We cannot say on this record that Supreme Court erred in its interpretation of the Plan's provisions.

We also find no merit to the College's contention that Supreme Court's interpretation denied it any opportunity for recoupment of its investment. Plaintiff and Nelson were employed by the College prior to the adoption of the Plan and would have generated uncollected accounts receivable which the College retained when the two doctors joined the Plan as the BNPW partnership. There is no proof that the College provided compensation for clinical services to plaintiff and the other three doctors after adoption of the Plan. Participation in the Plan brought into operation a new agreement relating to, among other things, salary and fringe benefits.

Finally, we find no merit to the College's contention that the decision in *Albany Med. Coll. v McShane* (66 NY2d 982) compelled Supreme Court to order that the disputed pro rata shares of plaintiff and Nelson be paid to it. The issue determined there did not address the question *sub judice.*

Casey, J. P., Yesawich Jr. and Levine, JJ., concur. Ordered that the order is affirmed, with costs.